FILED

NOV 10 2021

Clerk of Court, United States District Court
Ohio Northern District - CLEVELAND

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | I N F O R M A T I O N |
| Plaintiff, | ) | |
| | ) | CASE NO. 1:21 CR 805 |
| v. | ) | Title 18, United States Code, |
| | ) | Section 1349 |
| JAMES RICHARD STOTE, | ) | |
| PHILLIP J. AUGUSTIN, | ) | JUDGE BARKER |
| Defendants. | ) | |

GENERAL ALLEGATIONS

At all times relevant to this Information, unless otherwise specified:

The Paycheck Protection Program

1. The Coronavirus Aid, Relief, and Economic Security ("CARES") Act was a federal law enacted in or around March 2020 and designed to provide emergency financial assistance to the millions of Americans who are suffering the economic effects caused by the COVID-19 pandemic. One source of relief provided by the CARES Act was the authorization of forgivable loans to small businesses for job retention and certain other expenses, through a program referred to as the Paycheck Protection Program ("PPP").

2. In order to obtain a PPP loan, a qualifying business submitted a PPP loan application, which was signed by an authorized representative of the business. The PPP loan application required the business (through its authorized representative) to acknowledge the program rules and make certain affirmative certifications in order to be eligible to obtain the PPP loan. In the PPP loan application (Small Business Administration ("SBA") Form 2483), the small

business (through its authorized representative) was required to provide, among other things, its: (a) average monthly payroll expenses; and (b) number of employees. These figures were used to calculate the amount of money the small business was eligible to receive under the PPP. In addition, businesses applying for a PPP loan were required to provide documentation confirming their payroll expenses.

3. A PPP loan application was processed by a participating lender. If a PPP loan application was approved, the participating lender funded the PPP loan using its own monies. While it was the participating lender that issued the PPP loan, the loan was 100% guaranteed by the SBA. Data from the application, including information about the borrower, the total amount of the loan, and the listed number of employees, was transmitted by the lender to the SBA in the course of processing the loan.

4. PPP loan proceeds were required to be used by the business on certain permissible expenses—payroll costs, interest on mortgages, rent, and utilities. The PPP allowed the interest and principal on the PPP loan to be entirely forgiven if the business spent the loan proceeds on these expense items within a designated period of time and used a defined portion of the PPP loan proceeds on payroll expenses.

## The Defendants and Related Entities and Individuals

5. JAMES RICHARD STOTE was a resident of Broward County, Florida. STOTE was the true owner of FS Financial, Inc., and USA Homes and Remodeling, Inc. FS Financial, Inc. had been in the business of providing credit-related services, such as improving credit scores and obtaining commercial loans. USA Homes and Remodeling, Inc. was a corporate entity with minimal legitimate operations.

6. PHILLIP J. AUGUSTIN was a resident of Broward County, Florida. AUGUSTIN was the true manager and one of the true owners of Clear Vision Music Group ("Clear Vision") and Top Gun Consulting and Management LLC ("Top Gun"). Clear Vision and Top Gun had limited operations prior to the COVID-19 pandemic.

7. Ross Charno (charged separately) was a resident of Broward County, Florida. Charno was the true owner of PM Autobody, Inc. ("PM Autobody") and OMP Enterprises LLC ("OMP"), two entities with minimal legitimate operations.

8. Wyleia Nashon Williams (charged separately) was a resident of Broward County, Florida.

9. Deon D. Levy (charged separately) was a resident of Bedford Heights, Ohio. Levy was the true owner and manager of Apex Now Corp. ("Apex Now") and Urban Housing Group LLC ("Urban Housing").

10. Apex Now was an Ohio corporation with its listed principal address in Solon, Ohio, which performed construction services in Northeast Ohio and elsewhere.

11. Urban Housing was an Ohio corporation with its listed principal address in Highland Heights, Ohio, which had limited operations, but performed some construction services in Northeast Ohio.

12. Bank Processor 1 was a third-party company processor, based in Redwood City, California, that processed PPP loan applications for participating lender banks. Members of the public could access an online portal for applying for PPP loans through Bank Processor 1's website, and it received applications through that portal submitted to its servers located in California.

## COUNT 1
(Conspiracy to Commit Wire Fraud, 18 U.S.C. § 1349)

The Acting United States Attorney charges:

13. The allegations contained in paragraphs 1 through 12 of this Information are incorporated by reference as if stated fully herein.

### The Conspiracy and Scheme to Defraud

14. From in or around March 2020, and continuing through in or around June 2020, in the Northern District of Ohio, Eastern Division, and elsewhere, Defendants JAMES RICHARD STOTE and PHILLIP J. AUGUSTIN, and Ross Charno (charged separately), Wyleia Nashon Williams (charged separately), and Deon D. Levy (charged separately), did willfully, that is, with the intent to further the object of the conspiracy, knowingly combine, conspire, confederate, and agree together and with each other and with others known and unknown to the Acting United States Attorney, to commit an offense against the United States, that is, to knowingly, and with the intent to defraud, devise, and intend to devise, a scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, knowing that the pretenses, representations, and promises were false and fraudulent when made, and, for the purpose of executing the scheme and artifice, to knowingly transmit and cause to be transmitted, by means of wire communication in interstate commerce, certain writings, signs, signals, pictures and sounds, in violation of Title 18, United States Code, Section 1343.

### Purposes of the Scheme

15. The purposes of the scheme included, but were not limited to, the following: for Defendants and their co-conspirators to unlawfully enrich themselves by, among other things: (a) submitting, and causing to be submitted, false and fraudulent applications for loans and grants made available through the SBA to provide relief for the economic effects caused by the COVID-

19 pandemic, including PPP loans; (b) offering, paying, and receiving kickbacks in return for the submission of false and fraudulent loan applications; and (c) diverting fraud proceeds for the Defendants' and co-conspirators' personal use, the use and benefit of others, and to further the conspiracy.

Manner and Means of the Scheme

16. The manner and means by which Defendants and their co-conspirators carried out the scheme included, but were not limited to, the following:

a. STOTE, AUGUSTIN, Charno, and other co-conspirators submitted and caused to be submitted fraudulent PPP loan applications for entities under their control, including USA Homes and Remodeling, Inc., FS Financial, Inc., Clear Vision, Top Gun, PM Autobody, and OMP.

b. STOTE, AUGUSTIN, Charno, and other co-conspirators, solicited and recruited confederate borrowers, for whom they submitted and caused to be submitted fraudulent PPP loan applications, including for Apex Now and Urban Housing.

c. STOTE, AUGUSTIN, and Charno also worked with other co-conspirators to recruit additional confederate borrowers interested in obtaining PPP loans.

d. STOTE coordinated submitting the fraudulent PPP applications, largely through Bank Processor 1's online applications portal, but occasionally through other processors of PPP loan applications for participating PPP lenders. In most instances, STOTE used the confederate borrower's email to create an account with Bank Processor 1, which the borrower would then validate. In some instances, STOTE used email accounts he had created and controlled to create an account for the borrower with Bank Processor 1. The PPP loan applications included falsified payroll tax forms and falsified bank statements, and the application materials falsely and

fraudulently represented the borrowing entities' operations and finances, including the number of employees and the amount of monthly payroll.

e. STOTE and Charno falsified documents that were submitted, and were intended to be submitted, in support of the applications, which falsely reported the number of employees and the payroll expenses, choosing figures to yield a PPP loan in the amount desired. The falsified payroll figures were determined based on a formula in which the desired PPP loan amount was equal to the average monthly payroll expenses for 2019, multiplied by 2.5. In particular, STOTE and Charno created falsified Internal Revenue Service ("IRS") Forms 941 (titled, "Employer's Quarterly Federal Tax Return") for all four quarters of 2019 in support of the applications.

f. Williams assisted AUGUSTIN's efforts to recruit confederate borrowers and to gather information and documents from those borrowers to provide to STOTE for use in the fraudulent PPP applications.

g. From time to time, AUGUSTIN, STOTE, and Charno arranged with the confederate borrowers for the borrowers to pay 25% of the amount of the PPP loan as a fee or kickback for obtaining the loan, to be wired to accounts controlled by STOTE.

h. From time to time, STOTE wired to accounts controlled by AUGUSTIN, or otherwise transferred to AUGUSTIN's designees, a share of the 25% kickbacks.

i. STOTE, AUGUSTIN, Charno, Williams, Levy, and other co-conspirators coordinated their efforts, including obtaining information and documents from confederate borrowers and submitting fraudulent PPP loan applications, through the use of interstate wire communications.

All in violation of Title 18, United States Code, Section 1349.

## FORFEITURE

17. The allegations of Count 1 are hereby re-alleged and incorporated herein by reference for the purpose of alleging forfeiture pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c). As a result of the foregoing offense, Defendants JAMES RICHARD STOTE and PHILLIP J. AUGUSTIN shall forfeit to the United States all property, real and personal, which constitutes—or is derived from—proceeds traceable to the commission of the offense; including, but not limited to, the following:

   a. $1,107,715.13 seized pursuant to the execution of a federal seizure warrant on or about June 25, 2020, from CITI Bank Personal Savings Account No. ******3778. The account is in the name of JAMES STOTE.

   b. $30,000.00 U.S. currency seized on or about June 25, 2020, pursuant to the execution of a search warrant at the residence of STOTE located in or around Hollywood, Florida.

   c. Rolex watch (man's) – with gold and silver band - seized on June 25, 2020, pursuant to the execution of a search warrant at residence of STOTE located in Hollywood, Florida. The face of the watch reads: Rolex, Oyster Perpetual, Datejust, Superlative Chronometer, Officially Certified.

   d. Rolex watch (man's) – with gold and silver band and gold face with diamonds - seized on June 25, 2020, pursuant to the execution of a search warrant at residence of STOTE located in Hollywood, Florida. The face of the watch reads: Rolex, Oyster Perpetual, Date, Superlative Chronometer, Officially Licensed.

   e. Rolex watch (woman's) - with gold and silver band and diamonds around the face of the watch - seized on June 25, 2020, pursuant to the execution of a search warrant at

residence of STOTE located in Hollywood, Florida. The face of the watch reads: Rolex, Oyster Perpetual, Datejust, Officially Certified, Swiss Made.

f. Rolex watch (man's) – with silver band - seized on June 25, 2020, pursuant to the execution of a search warrant at residence of STOTE located in Hollywood, Florida. The face of the watch reads: Rolex, Oyster Perpetual, Submariner, 1000 ft=300 m, Officially Certified, Swiss-t, <25, Date. Back of the watch face: green holographic in color with the numbers 16233.

g. Rolex watch (man's) – with gold and silver band and blue face with date - seized on June 25, 2020, pursuant to the execution of a search warrant at residence of STOTE located in Hollywood, Florida. The face of the watch reads: Rolex, Oyster, Perpetual. The bottom of the face reads: Submariner, 1000 ft 300m, Superlative Chronometer, Officially Certified.

h. Gold braided/linked bracelet seized on June 25, 2020, pursuant to the execution of a search warrant at residence of STOTE located in Hollywood, Florida.

i. Gold braided/linked necklace – with 14k Italy on clasp - seized on June 25, 2020, pursuant to the execution of a search warrant at residence of STOTE located in Hollywood, Florida.

j. Silver in color ring with diamonds down both sides of the band. A large, square in shape, diamond is set in the top/middle of the ring. (Note: The stones appear to be diamonds; however, the ring has not yet been appraised by an authorized jeweler to confirm). The ring was turned over by STOTE to the FBI in Miami, Florida, on or about October 26, 2021.

k. Gold rope necklace and a "hamsa hand" charm with diamonds and secured with a lobster claw clasp. (Note: The stones appear to be diamonds; however, the necklace has

not yet been appraised by an authorized jeweler to confirm). The necklace was turned over by STOTE to the FBI in Miami, Florida, on or about October 28, 2021.

l.  All contents (approximately $271,588.28) of Fifth Third Bank account number ******2627. The account is in the name of 60 Days Funding and Investment Group. AUGUSTIN is the authorized representative of 60 Days Funding and Investment Group.

m.  All contents (approximately $8,681.07) of Fifth Third Bank account number ******2551. The account is in the name of 60 Days Funding and Investment Group. AUGUSTIN is the authorized representative of 60 Days Funding and Investment Group.

| | |
|---|---|
| BRIDGET M. BRENNAN<br>Acting United States Attorney | JOSEPH S. BEEMSTERBOER<br>Acting Chief, Fraud Section |
| By: *[signature]*<br>CHELSEA S. RICE, CHIEF<br>White Collar Crime Unit | By: *[signature]*<br>PHILIP TROUT<br>Trial Attorney, Fraud Section |